UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALVIN A. GREGORY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | 1:12-CV-0162-SEB-DML |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**ENTRY**

This is an appeal from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Alvin A. Gregory, ("Claimant" or "Mr. Gregory") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") (42 U.S.C. 423(d)), based on a disability onset date of October 10, 2006.  Mr. Gregory asserts that the decision denying him benefits was made in error and requests that the Court remand the case to the Commissioner.  For the reasons detailed herein, we find that his appeal is well-taken and REMAND the Commissioner's decision for further proceedings consistent with this entry.

**I.   Applicable Law and Standard of Review**

To be eligible for DIB, a claimant must prove he is unable to engage in any

1

substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. § 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. Id. At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if the claimant's impairments are not severe, then he is not disabled. 20 C.F.R. §§ 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are

2

disabling.   20 C.F.R. § 404.1525.   If the claimant's impairments do not satisfy a Listing, then his Residual Functional Capacity ("RFC") will be determined for the purposes of the next two steps. A claimant's RFC is his ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.   20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.   The claimant bears the burden of proof at steps one through four.   Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

At the fifth step, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.   The burden of proof shifts to the Commissioner at step five to prove that there are jobs that exist in the national economy that the claimant can perform.   Id.   For a claimant with purely exertional limitations, the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination.   The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled."   20 C.F.R. §§ 404.1569, 404.1569a.   Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs.   20 C.F.R. § 1569a(b).   If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step.   Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational

characteristics.   20 C.F.R. §§ 404.1569, 404.1569a; Haynes v. Barnhart, 416 F.3d 621, 629 (7th Cir. 2005); Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994).

A court is not tasked with providing a *de novo* determination of the plaintiff's entitlement to benefits, only deciding if the Commissioner's decision is supported by substantial evidence and is otherwise free of legal error.   Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993).   The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   This standard requires "more than a mere scintilla," but less than a preponderance, of the evidence.   Richardson, 402 U.S. at 401; Wood v. Thompson, 246 F.3d 1026, 1029 (7th Cir. 2001).   This limited scope of judicial review derives from Congress's intent that the Commissioner, not the courts, must make disability determinations.   *See* Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004).


## II.  Procedural Background

The procedural path on which Mr. Gregory has had to travel in terms of attempting to secure DIB benefits has been unusually complex and circuitous.   Mr. Gregory applied for DIB on February 22, 2007, claiming that he had been disabled since October 10, 2006 due to chronic lower back pain and degenerative disc disease.   His application was denied initially and Mr. Gregory was granted an administrative hearing at which he testified and was represented by counsel.   On July 17, 2009, the ALJ (hereinafter "ALJ #1") issued a

finding that Mr. Gregory was not disabled.  Upon Mr. Gregory's appeal, the Appeals Council denied review, making the ALJ #1's decision the final determination of the Commissioner.  In December 2009, Mr. Gregory initiated a civil action, and following judicial review in March 2011, the Court remanded the case for rehearing to allow an ALJ to reconsider the credibility findings at step five of his sequential analysis and to re-apply the grids to properly reflect Mr. Gregory's ability based on his age to stand and sit.  R. 479.

During his appeal of the denial of his first application, while the matter was still pending before the Appeals Council, Mr. Gregory submitted a second application for DIB on August 2009, claiming a disability onset date of July 18, 2009, (one day after ALJ #1 found him to be not disabled).  The second application was denied initially and upon reconsideration; the second ALJ (hereinafter "ALJ #2"), however, subsequently entered a finding of disability in December 2010.  On May 16, 2011, the Appeals Council ordered that Mr. Gregory's first application be reconsidered based on "the additional evidence submitted with the subsequent claim."  R. 458.

On November 22, 2011, a third ALJ (hereinafter "ALJ #3") determined that Mr. Gregory was not eligible for DIB during the period from October 10, 2006, through July 17, 2009.  Mr. Gregory now seeks judicial review of this decision based on the argument that ALJ #3 failed to properly evaluate Mr. Gregory's post-July 17, 2009 evidence and findings as required by the Appeals Council.

### III.  Claimant's Background

Medical Evidence:   Mr. Gregory was 47 years old at the time of his first application for DIB in 2007.  By the time of his hearing before ALJ #3 in November 2011, Mr. Gregory was 52 years of age.   He has a high school education and a twenty-four year work history as a millwright and welder at Borg Warner Automotive, a position that required him to engage in heavy lifting.  Mr. Gregory stopped working in October 2006 due to persistent back pain.  He reported at the time of his first DIB application that he had previously worked through the pain but eventually became unable to tolerate the pain and adequately perform his job related duties.

Mr. Gregory's medical history reveals that, in March 2006, he was treated by neurosurgeon Julius A. Silvidi, M.D. for lateral disc protrusions affecting the L5 and L4-5 level and for spinal canal stenosis.  R. 372.   He underwent physical therapy in the fall of 2006 during which the therapist observed that Mr. Gregory had "decreased trunk range of motion, minor gait deviation, and minor postural deficits." R. 174.   After trying various treatments, including cortisone shots administered by Scott Taylor, M.D., in November 2006, and a facet nerve block procedure in December 2006, Mr. Gregory was prescribed pain medications early in 2007, including Percocet, Vicodin, and Flexeril.  R. 151-6, 186-7.

In April 2007, his treating physician, Thomas Melham, M.D., opined that Mr. Gregory was unable to return to work as a millwright finding him "totally disabled" due to his chronic back pain.   R. 285-6.

Later that summer, in August 2007, Mr. Gregory's complaints of back pain of varying intensity continued.   He consulted F. Lavallo, M.D., the agency reviewing physician, who assessed his ability to work as limited in exertion and posture.   R. 314-21. Two months later, a second state agency reviewing doctor, J. V. Corcoran, M.D., examined Mr. Gregory and concurred with Dr. Lavallo's opinion.

In September 2009, Mr. Gregory was seen by Maya Hosein, M.D., who conducted a physical exam and reported that he walked stiffly and exhibited a decreased range of motion in his back and bilateral knees.   R. 756, 769.   The following month, two other agency doctors—J. Sands, M.D. and Robert Bond, M.D.—also concluded after examining Mr. Gregory that he was able to perform a restricted range of light work.   R. 781, 786.

At a November 2011 hearing before ALJ #3, medical expert, Richard Hutson, M.D., testified that Mr. Gregory's impairments did not show the requisite loss of neurological functioning to meet or equal Listing 1.04.   He elaborated on this assessment by agreeing with Dr. Sands's opinion that Mr. Gregory was able to perform a range of light work; however, he felt that the conclusions reached by Dr. Lavallo, indicating a capacity to perform a range of medium work, were overly ambitious.   R. 400-1.

ALJ #3's Findings:   At step one, Mr. Gregory was determined to be not engaged in substantial gainful activity.   R. 366.   At step two, Mr. Gregory was found to have the following severe impairments: degenerative disc disease; bilateral, degenerative joint disease in the knees; bilateral carpal tunnel syndrome; and morbid obesity.   R. 367.   At step three, Mr. Gregory's impairments were deemed not to meet or medically equal a listed

impairment in 20 C.F.R. § 404, Subpart P, Appendix 1.  R. 369.  In evaluating Mr. Gregory's RFC, he was found to be capable of performing light work with restrictions on lifting, climbing, and reaching.  R. 369–70.  At step four, ALJ #3 concluded that Mr. Gregory could not perform his past relevant work as a millwright and welder.   At the final step of the analysis, ALJ #3 concluded that Mr. Gregory could, however, perform a significant number of jobs in the national economy and was therefore not disabled.  R. 375–76.

## IV. Discussion and Analysis

Mr. Gregory contends that ALJ #3's findings reflect three errors, all of which touch on the issue of whether evidence from a period of determined disability beginning on July 18, 2009, is germane to the determination of disability for a period immediately preceding that date.  Stated conversely, must the ALJ rely only on evidence in the record relating to the dates of disability claimed beginning in October 2006 up through July 17, 2009.  Mr. Gregory specifically challenges ALJ #3's step three findings and his assessment of his RFC, based on ALJ #3's failure to reconcile his conclusion that Mr. Gregory did not medically equal Listing 1.04 on July 17, 2009, with the final administrative finding that Mr. Gregory's condition did medically equal that Listing on or after July 18, 2009, nor did ALJ #3 properly take into account the opinion of medical expert, Dr. Rosch.  Mr. Gregory also asserts that ALJ #3 relied erroneously on orthopedist Dr. Hutson's November 2011 testimony as the basis for both his step three finding and his RFC assessment.  Third, Mr. Gregory maintains that

ALJ #3 erroneously relied on his own personal observations of Mr. Gregory in August 2011 in deciding that he was neither credible nor disabled.   We consider each of these contentions in turn below.


**A.   Did ALJ #3's failure to properly link Mr. Gregory's period of non-disability with his period of disability which commenced on July 18, 2009?**   This case presents the unusual circumstance of a single Claimant with two periods of alleged disability running sequentially to one another.   Initially, the ALJ determined that the Claimant was not disabled for a three-year period prior to a period of disability as determined by a second ALJ.   Citing Parker v. Astrue, Mr. Gregory claims that ALJ #3, who was considering his first application for benefits, should have included a sufficient reconciliation of this conflict.   597 F.3d 920, 921 (7th Cir. 2010).   ("Although judicial review of the decisions of administrative agencies is deferential, it is not abject; of particular relevance to these appeals, we cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome.") (Internal citations omitted). Pl's Br. at 7.   Specifically, Mr. Gregory claims that ALJ #3 should have included a discussion of the opinion of Dr. Rosch, who was the medical expert who testified at the administrative hearing relating to the second application, as well as the prior findings by ALJ #2 that Mr. Gregory's condition medically equaled Listing 1.04.   The Commissioner responds that ALJ #2's decision as well as Dr. Rosch's, do not pertain to

9

Mr. Gregory's condition prior to July 18, 2009, and therefore, they are of little to no relevance in the case currently before us.

While we agree that it was not ALJ #3's responsibility to reconstruct every detail of the either of the prior hearings he was subject to the instructions of the Appeals Council directing him to consider evidence obtained through the second application including its hearing.   R. 458.   The Appeals Council apparently regarded as important the process of setting the boundaries on the period under review, stating in its order, as follows:

> The Appeals Council notes that the claimant was found to be under a disability as of July 18, 2009, based on a subsequent application. … The Administrative Law Judge will consider the additional evidence submitted with the subsequent claim. The Administrative Law Judge may wish to obtain the testimony of a medical expert to address the issue of onset of disability prior to July 18, 2009.   Id.

Thus the particular issue deemed by the Appeals Council to be most relevant was of disability onset date.   The Appeals Council recognized that for a claimant to be deemed disabled as of a particular date (here, July 18, 2009), there must be evidence to support that finding, including doctor's opinions, prior to that date of onset.   ALJ #3 clearly considered evidence the available from the 2006 through July 17, 2009 time period; additionally he considered evidence from health care providers Ceola Berry, Ph.D. and Maya Hosein, M.D. in August 2009; and included to the assessment by Richard A. Hutson, M.D. in 2011 in his analysis.   R. 373-4.    However, we find virtually no discussion regarding the conflicting decision by ALJ #2.   In particular, ALJ #2 concluded that Mr. Gregory's—

> Pain was aggravated with sitting on a hard surface, bending,

10

and lifting.   It improved with standing and walking.   The claimant's pain was located in the lumbosacral joint with some pain radiating into the left buttock and posterior upper leg (EXB-IF at 3).   A consultative medical exam further noted that the claimant reported quite substantial limitations from his back pain, which he rated at 8 on a 10-point scale.   R. 452.

These findings by ALJ #2 conflict with ALJ #3's findings regarding the Mr. Gregory's ability to sit and stand, yet ALJ #3 provides no explanation for the inconsistency.   The Court cannot assess the soundness of these findings without some in-depth analysis of these factors by ALJ #3.   Mr. Gregory's disability onset is not the sort that would occur instantaneously, like the flip of a switch; thus, there clearly was a time period during which he became disabled.   ALJ #3 fails to describe what occurred during this period as he is required.   While Mr. Gregory exaggerates in arguing that "ALJ #3 did not identify any event taking place overnight from July 17, 2009 to July 18, 2009 that warranted such a decline in [Mr.] Gregory's medical condition," clearly, the relevant events experienced by Mr. Gregory during this transition from non-disability to disability required some explication by ALJ #3.

The evidence of Mr. Gregory's physical circumstances during the time period between October 2006 and July 17, 2009 is relevant to disability onset, as well as evidence obtained by ALJ #2.   Accordingly, ALJ #3 erred in failing to discuss or analyze the continuum of evidence both before and after the date of disability onset.

**B.  Was the ALJ #3's reliance on medical expert Dr. Hutson in error?**   Mr. Gregory contends that ALJ #3 erroneously relied on the opinion of the medical expert, Dr. Hutson, in reaching both his step-three finding and the RFC assessment.   Pl's Br. at 7-8. Mr. Gregory maintains that Dr. Hutson's opinion, in his agreement with non-examining agency physician Dr. Sands's determination that Mr. Gregory could do a limited range of "light" work, ran contrary to a matter previously adjudicated otherwise with respect to Mr. Gregory's disability.   Pl's Br. at 7-8.   Because ALJ #2  had previously determined that Mr. Gregory equaled Listing 1.04 on and after July 18, 2009, and that Mr. Gregory was found to be disabled at step three on and after July 18, 2009, ALJ #3 as well as Dr. Hutson were bound by the prior determination and foreclosed from finding that Mr. Gregory was less limited.   The Commissioner rejoins that Mr. Gregory has not accurately represented the record because in truth Dr. Hutson was instructed by ALJ #3 to opine regarding Mr. Gregory's condition during the time period which ALJ #3 regarded as relevant, namely, the period from October 2006 through July 17, 2009.   Def.'s Br. at 11.

On this issue, we find the Mr. Gregory's argument unpersuasive.   The purpose of the hearing before ALJ #3 hearing was not to reconsider the DIB determination of July 18, 2009; rather, it was to obtain information from the prior proceeding, as described *supra.*, that would inform ALJ #3 as to the onset of Mr. Gregory's medical condition before July 18, 2009.   In conducting his review of the evidence, ALJ #3 noted as follows:

> Dr. Hutson is a specialist in the area of orthopedics, and his opinion is consistent with the evidence of record as a whole as it pertain[s] to the relevant time period, including evidence

12

> obtained at the hearing level. … I considered the opinion of treating physician Thomas J. Melham, M.D., …. Dr. Melham's opinion that the claimant cannot return to his previous work as a millwright is not inconsistent with the record.   However, Dr. Melham also opines that the claimant is "totally disabled at this time and unable to return to gainful employment."   (EX. 8F at 2).   This opinion is inconsistent with the objective medical evidence of record, including Dr. Melham's treatment record and the referenced functional capacity evaluation.   Moreover, Dr. Melham is a primary care provider, not an orthopedic specialist.  R. 374-5.

Thus, ALJ #3 gave "considerable weight" to Dr. Hutson's opinion based on his review of the pre-July 18, 2009 record and drawing on his expertise as an orthopedic medical expert.  In contrast, ALJ #3 accorded little credence to attending physician, Thomas J. Melham, M.D., who opined that Mr. Gregory was "totally disabled."  R. 374. Therefore, ALJ #3 adequately discharged his responsibility to articulate his reasons for relying on one medical opinion as opposed to another, especially when the discounted opinion is that of the treating physician.

In sum, because the opinions of physicians who provide conclusions on the record are not rendered invalid simply because they support a determination of non-disability, we conclude that ALJ #3's reliance on Dr. Hutson's testimony was not, as Mr. Gregory contends, erroneous.

**C.   Was the ALJ #3's reliance on his personal observation of the Claimant improper?**   Finally, we turn to Mr. Gregory's argument that ALJ #3 improperly relied on

his personal observations of Mr. Gregory in August 2011, including his sun-tanned appearance, in reaching his credibility determination.    To this allegation, the Commissioner responds that while ALJ #3 did comment on Mr. Gregory's "very tan" appearance, including the fact that Mr. Gregory had used his "back pay" from his disability benefits to purchase a pontoon boat for fishing with friends, and that he had spent the day prior to the hearing engaged in such recreational activity. ALJ #3 did not draw any adverse inferences from these observations or comments.   Def.'s Br. at 13, R. 371.   Moreover, the Commissioner notes, assuming *arguendo* that ALJ #3 did improperly rely on this evidence, Mr. Gregory has failed to establish that such an error warrants reversal.   *See* Shinseki v. Sanders, 556 U.S. 396, 409 (2009); (Burden of showing harmful error on party attacking the agency's determination) (citing Nelson v. Apfel, 131 F.3d 1228 (7th Cir. 1997)).

We agree that Mr. Gregory has failed to meet his burden on this claim.   ALJ #3 supported his credibility finding with various reasons, and Mr. Gregory has not shown that these comments regarding his appearance outweighed factors addressed in ALJ #3's analysis.   Lacking any persuasive support for his position, we accept the Commissioner's view that no error occurred.

## V.  Conclusion

For the reasons set forth above, ALJ #3's finding that Mr. Gregory was not disabled from October 10, 2006, through July 17, 2009, disregarded the direction from the Appeals Council and was thus erroneous.   That decision is therefore REVERSED and

REMANDED for further consideration of the onset date of Mr. Gregory's disability, in accordance with our discussion in this entry.   In all other respects, the decisions of the Commissioner are AFFIRMED.   Judgment consistent with this entry shall now issue.


    IT IS SO ORDERED.


Date: 03/29/2013

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Joseph W. Shull
Attorney
jshull@joeshull.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov